UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ARAM HOMAMPOUR, et al.,

          Plaintiffs,

     v.

BLUE SHIELD OF CALIFORNIA LIFE
AND HEALTH INSURANCE COMPANY,
et al.,

          Defendants.

Case No.  15-cv-05003-WHO

**ORDER GRANTING IN PART MOTION
TO DISMISS**

## INTRODUCTION

Plaintiffs Homampour, Bartels, and Naka bring a putative class action lawsuit against defendants Blue Shield Life & Health Insurance Co. ("Blue Shield Life") and California Physicians' Service dba Blue Shield of California ("Blue Shield of California"), alleging two causes of action under the Employee Retirement Income Security Act ("ERISA").  Second Amended Complaint ("SAC") ¶ 107, 115-116 (Dkt. No. 26).  Plaintiffs generally allege that defendants violated ERISA by denying requests for coverage for Harvoni treatments, a drug used to treat Hepatitis C, and contend that (1) under section 1132(a)(1)(B) they are entitled to enforce their rights under the terms of defendants' plans and clarify their rights to future benefits, and (2) under section 1132(a)(3), they are entitled to equitable relief in the form of (a) an injunction compelling defendants to retract their denials of Harvoni, provide notice of this determination, and provide for re-review of all improperly denied claims and (b) an accounting and disgorgement of defendants profits from their improper denials of Harvoni.  *Id.* ¶ 113, 128.

Defendants move to dismiss plaintiffs' complaint, asserting that (1) plaintiffs' claims for injunctive relief and to clarify their rights to future benefits are moot as Blue Shield of California has amended its Harvoni policy and given notice to its insureds that they can resubmit claims for

treatment; (2) plaintiffs have failed to state a claim against defendant Blue Shield Life; and (3) plaintiffs' claims for disgorgement of profits should be dismissed as monetary relief is not a remedy under section 1132(a)(3). I agree with Blue Shield of California that its change of policy moots plaintiffs' claims for injunctive relief and that plaintiffs have failed to allege standing against Blue Shield Life, and GRANT defendants' motion to dismiss on those grounds.  I DENY defendants' motion to dismiss plaintiffs' claim for disgorgement because defendants have not conclusively shown that this is an impermissible legal remedy under section 1132(a)(3).

## BACKGROUND

Plaintiffs Aram Homampour, John Bartels, and Jon Naka suffer from Hepatitis C, a contagious virus that attacks the liver and may cause severe liver damage, infections, liver cancer, and death.  *Id.* ¶ 5.  Harvoni is a prescription drug used to treat Hepatitis C.  *Id.* ¶ 7.  It was approved by the FDA on October 10, 2014 and in clinical studies has cured 95-99 percent of patients after eight to twelve weeks of treatment with minimal side effects.  *Id.*  The cost of a full 12 weeks of treatment of Harvoni is approximately $99,000.  *Id.* Viekira Pak is another prescription drug used to treat Hepatitis C.  *Id.* ¶ 121.  Viekira Pak costs approximately $84,000 for a full 12 weeks of treatment.  *Id.* Viekira Pak may cause significant side effects or complications for patients.  *Id.* ¶ 122.

Homampour, Bartels, and Naka each participated in an employee welfare benefit plan covered by ERISA and issued by Blue Shield of California.  *Id.* ¶ 11-13.  Although each plaintiff participated in a separate plan, all of the plans provided coverage for treatments that are medically necessary in exchange for the payment of premiums.  *Id.* ¶ 25, 37, 55.  Bartels's plan (which uses nearly identical language to Homampour's and Naka's plans) defines medically necessary as follows:

Services which are Medically Necessary include only those which have been established as safe and effective and are furnished in accordance with generally accepted professional standards to treat an illness, injury, or medical condition, and which, as determined by Blue Shield, are:
(a) consistent with Blue Shield medical policy; and,
(b) consistent with the symptoms of diagnosis; and,
(c) not furnished primarily for the convenience of the patient, the attending Physician or other provider; and,
(d) furnished at the most appropriate level which can be provided safely and effectively to the patient.

United States District Court
Northern District of California

1    *Id.* ¶ 37, SAC Ex. H at 147-148 (Dkt. No. 26-8).

2

3    Each of the named plaintiffs made requests for and was denied coverage of Harvoni on the

4    grounds that the medication was not medically necessary.  SAC ¶ 21, 39, 57.  Blue Shield of

5    California outlined its Harvoni criteria in various communications with plaintiffs.  *Id.* ¶  23, SAC

6    Ex. A (Dkt. 26- 1).  On April 22, 2015 Blue Shield denied Homampour's appeal for Harvoni

7    coverage because under the Blue Shield medical necessity criteria, a patient requesting Harvoni

8    coverage must have a METAVIR score of F3 or F4 and Homampour's score was F0-F1.  SAC Ex.

9    A. (A METAVIR score assesses liver fibrosis (scarring) and health.  The scale ranges from F0 -

10   F4 with F0 reflecting no or minimal liver damage and F4 reflecting the highest level of liver

11   damage.  *Id.*).

12   On February 4, 2016, Blue Shield sent Homampour a letter explaining that under the Blue

13   Shield Commercial Criteria, a patient must either have cirrhosis (indicated by fibrosis scores of F4

14   or F3) or show a contraindication to Viekira that would not be expected with Harvoni treatment.

15   SAC ¶ 33.  Blue Shield of California sent similar explanations to Bartels and Naka, indicating that

16   under its Harvoni criteria, a patient must demonstrate either (1) an F4 or F3 fibrosis score or (2)

17   demonstrate a contraindication to Viekira that would not be expected with Harvoni.  *Id.* ¶ 39, 57;

18   SAC Ex. I (Dkt. No. 26-9); SAC Ex. M (Dkt. No. 26-13).

19   On December 17, 2015, Blue Shield amended its Harvoni coverage criteria to expand

20   coverage for Harvoni.  Garrison Decl. Ex. A (Dkt. No. 29-1).  Under this version of the policy

21   Blue Shield extended coverage to include (1) patients with fibrosis level F1 or greater if use is

22   consistent with FDA guidelines and (2) patients with fibrosis level F0 who have evidence of other

23   extrahepatic complications, or symptoms related to chronic Hepatitis C (i.e., severe fatigue), or

24   who are at high risk for transmission of Hepatitis C, or who have pregnancy-related concerns, or if

25   there is evidence of shared decision-making between the member and physician regarding the

26   benefits and risks of treatment, including the option not to treat.  *Id.*

27   On April 11, 2016, Blue Shield updated its Harvoni coverage policy again and removed

28   the requirement that certain patients have a specific contraindication to Viekira Pak that would not

3

1    be expected with Harvoni in order to qualify for coverage.  Garrison Decl. Ex. B (Dkt. No. 29-2).

2          On or around April 19, 2016, Blue Shield sent letters to its current members and their

3    providers who had requested and been denied Harvoni coverage in the past, informing them of a

4    change in policy and inviting them to resubmit any requests.  Garrison Decl. Ex. C (Dkt. No. 29-

5    3).  On May 18, 2016 Blue Shield sent additional letters to members and providers who had been

6    denied Harvoni coverage because they did not show a specific contraindication to Viekira Pak that

7    would not be expected with Harvoni and invited them to resubmit any requests.  Garrison Decl.

8    Ex. D (Dkt. No. 29-4).

9          Defendants move to dismiss for lack of subject matter jurisdiction under Federal Rule of

10   Civil Procedure 12(b)(1), and for failure to state a claim under Rule 12(b)(6).  Motion to Dismiss

11   ("Mot.") (Dkt. No. 29).

12                                    **LEGAL STANDARD**

13         A Rule 12(b)(1) attack for mootness may be facial or factual.  *White v. Lee*, 227 F.3d 1214,

14   1242 (9th Cir. 2000).  A factual attack "disputes the truth of the allegations that, by themselves,

15   would otherwise invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035,

16   1039 (9th Cir. 2004).  When a party raises a factual attack, a court "may review evidence beyond

17   the complaint without converting the motion to dismiss into a motion for summary judgment."  *In

18   re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1236 (9th Cir. 2008).  "If the moving party

19   converts the motion to dismiss into a factual motion by presenting affidavits or other evidence

20   properly brought before the court, the party opposing the motion must furnish affidavits or other

21   evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  *Wolfe v.

22   Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (internal quotations omitted).

23         Under Rule 12(b)(6), a district court must dismiss a complaint if it fails to state a claim

24   upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, plaintiffs must

25   allege "enough facts to state a claim to relief that is plausible on its face."  *See Bell Atl, Corp. v.

26   Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face when the plaintiffs plead

27   sufficient facts to "allow[] the court to draw the reasonable inference that the defendant is liable

28   for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

United States District Court
Northern District of California

4

Courts do not require "heightened fact pleading of specifics," but a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In assessing whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiffs' allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## DISCUSSION

Defendants make three arguments in their motion to dismiss: (1) plaintiffs' claims for injunctive relief and to clarify their rights under the plan should be dismissed as moot because Blue Shield of California has already updated its Harvoni policy and given notice to its insureds that they may reapply for coverage; (2) defendant Blue Shield Life should be dismissed as plaintiffs have not adequately stated a claim against this entity; and (3) plaintiffs' claim for disgorgement of profits should be dismissed because this is not a remedy available under ERISA. Mot. 1. I heard argument on August 10, 2016 and now address each argument in turn.

## I.      CLAIMS FOR INJUNCTIVE RELIEF

Plaintiffs have requested several forms of injunctive relief. They want defendants to clarify plaintiffs' rights to future benefits, retract Blue Shield's categorical denials of Harvoni treatment, provide notice of these actions to all plans' subscribers and members who have been denied requests for Harvoni treatments, and provide for the review of denied Harvoni claims. SAC ¶ 113, 128.

Defendants argue that all of these claims are moot. Blue Shield of California has already updated its Harvoni criteria policy to expand Harvoni coverage, given notice to its subscribers and members that have been denied Harvoni coverage in the past, and invited subscribers and members to re-apply for Harvoni coverage under the new criteria. Garrison Decl. ¶¶ 3-6; Garrison Decl. Exs. A-D.

In opposition, plaintiffs contend that their claims are not moot because (1) defendants could voluntarily resume denying Harvoni treatment in the future; (2) plaintiffs Bartels and Naka

5

have not received Harvoni treatment; and (3) defendants' new Harvoni policy still unlawfully restricts Harvoni coverage for individuals with F0 liver fibrosis.  Opposition ("Oppo.") 10 (Dkt. No. 33).  *See* Bartels Decl. (Dkt. No. 33-1); Naka Decl. (Dkt. No. 33-2).  These arguments are not convincing.

To be sure, voluntary cessation of a practice does not necessarily mean that claims challenging that practice are moot.  "[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).  However, "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Export Assn., Inc.*, 393 U.S. 199, 203.  The party asserting mootness bears the "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to recur." *Id.*

Plaintiffs contend that in the ERISA context, a claim is not mooted when an insurer grants a plaintiff previously denied benefits.  Oppo. 6-9.  But plaintiffs cite only to cases in which insurers granted benefits based on individualized reinterpretation or reconsideration of their existing policies, rather than as part of an overarching and generally applicable policy change.

Plaintiffs point first to *Englehardt v. Paul Revere Life Insurance* Company, in which the insurer (Paul Revere) granted a member previously denied benefits after the member brought a lawsuit.  77 F. Supp. 2d 1226, 1235 (M.D. Ala. 1999).  The *Englehardt* court found that Englehardt's claim was not moot because "without a legal ruling, Paul Revere would be free to return to its old ways." *Id.* (internal citations omitted).  *Englehardt* is not applicable because Paul Revere conducted a narrow reinterpretation of Englehardt's specific claim under its existing policy and did not institute a larger change in policy or claim criteria.  *Id.*

Plaintiffs also point to *Kerns v. Caterpillar, Inc.*, in which an employer voluntarily chose not to charge healthcare premiums to a group of plaintiffs but consistently maintained that it had "a legal right to modify or terminate benefits at any time."  499. F. Supp. 2d 1005, 1024 (M.D. Tenn. 2007).  Because the employer maintained that it had a legal right to charge premiums, the court in *Kern* reasonably concluded that defendant's assurances alone were insufficient to moot

United States District Court
Northern District of California

1    the plaintiffs' claims.  *Id.*

2        Finally, Plaintiffs point to *Lamuth v. Hartford Life & Accident Insurance Company*, in

3    which an insurer granted previously-denied disability benefits to a plaintiff after she filed a suit.

4    30 F. Supp. 3d 1036, 1044-45 (W.D. Wash. 2014).  The *Lamuth* court concluded the claims were

5    not moot as the insurer could, at any time, reexamine Lamuth's disability claim and deny benefits

6    based on the date of disability and pre-existing conditions limitations in its policy.  *Id.* at 1044.

7    The court concluded Lamuth was entitled to a determination of her date of disability which would

8    resolve future disputes.  *Id.*

9        All of these cases involve insurers granting benefits to plaintiffs based on limited and

10   individualized reinterpretation or reconsideration of existing policies.  These cases would parallel

11   plaintiffs' claims here if Blue Shield of California had extended Harvoni coverage to plaintiffs

12   under its prior Harvoni criteria.  Instead, Blue Shield of California revised its entire Harvoni

13   policy to extend coverage and benefits generally to all members like plaintiffs.  Garrison Decl. ¶ 4;

14   Garrison Decl. Ex. B.

15       A change in policy moots a claim if the policy represents a "permanent change," and is

16   "broad in scope and unequivocal in tone" such that it indicates that recurrence of the challenged

17   practice is unlikely.  *White*, 227 F.3d at 1243.  In *Iron Arrow Honor Society v. Heckler*, the Court

18   found a claim moot on summary judgment where a formal change in policy was publicly

19   announced, making it unlikely to be later reversed.  464 U.S. 67, 71-72 (1983) (claim was moot

20   where a University "announced its decision to . . . the public, and the courts" such that "there is

21   'no reasonable likelihood' that the University will later change its mind").  In *Picrin-Peron v.*

22   *Rison*, the Ninth Circuit found that a claim challenging certain provisions in a student election

23   policy was moot where the school established a new policy and entered into a memorandum of

24   understanding committing not to reenact the challenged provisions such that "there was no

25   reasonable expectation that the injury the plaintiffs suffered will recur."  378 F.3d 1129, 1130-

26   1131 (9th Cir. 2004).

27       The defendants submitted declarations and accompanying attachments showing that Blue

28   Shield of California has changed and broadened its Harvoni policy, notified subscribers and

United States District Court
Northern District of California

7

1   members previously denied coverage of the policy update, and invited these individuals to

2   reapply.  Garrison Decl. ¶¶ 4-6; Garrison Decl. Exs. B-D.  Defendants also submitted evidence

3   that Blue Shield of California removed the requirement that certain members show a

4   contraindication to Viekira Pak to qualify for Harvoni, notified members previously denied

5   coverage for this reason of the update, and invited these individuals to reapply.  *Id.*  Given these

6   actions, recurrence of the challenged practice is unlikely and plaintiffs' claims against Blue Shield

7   of California for denial of benefits are moot.

8       Plaintiffs argue that their claims cannot be moot because Bartels and Naka have not

9   received Harvoni treatment.  Oppo. 9.  But they do not contest defendants' evidence that Blue

10  Shield of California has updated its Harvoni policy and has given notice to previously denied

11  members and invited them to reapply for Harvoni treatments.  Neither Bartels nor Naka have

12  indicated that they have applied for and been denied coverage under Blue Shield of California's

13  new Harvoni policy.  Instead, they both indicate that they received approval for and have already

14  taken Viekira Pak to treat their Hepatitis C. Bartels Decl. ¶ 11; Naka Decl. ¶ 5.  Bartels and Naka

15  are entitled to enforce their right to benefits under their respective health plans, not necessarily to

16  receive the Harvoni treatment itself.  29 U.S.C.A. § 1132(a)(1)(B).

17      Plaintiffs have not presented evidence that they have been or would be denied coverage

18  under the new Harvoni policy.  Bartels indicates that he received an unsolicited phone call in mid-

19  April, 2016 notifying him that he had been approved for Viekira Pak and that he decided to take

20  Viekira Pak because he believed it was his "only chance to get treatment for [his] condition."

21  Bartels Decl. ¶ 5.  Plaintiffs note that Bartels received this phone call days after defendants

22  updated the Harvoni policy and less than a month before defendants sent notifications to their

23  members publicizing the policy change.  Oppo. 11.

24      This exchange is not evidence that plaintiffs have been or would be denied coverage under

25  the new Harvoni policy.  Because Bartels received the call shortly after the policy change, it is

26  likely that the decision to approve Viekira Pak was in motion before the change.  And, because

27  defendants had not yet sent out notice of the policy update, it appears they were not yet done

28  implementing the changes.  Plaintiffs admit that Homampour was approved for Harvoni on May

United States District Court
Northern District of California

1    12, 2016, after the new policy went into effect.  Oppo. 4.  Plaintiffs' evidence does not sufficiently

2    rebut defendants' evidence demonstrating that plaintiffs would be granted Harvoni treatment

3    under the new Harvoni policy.  Plaintiffs' argument that their claims are not moot because Bartels

4    and Naka have not received Harvoni fails.

5            Plaintiffs also argue that their claims are not moot because Blue Shield's policy still

6    restricts Harvoni to certain patients with F0 fibrosis scores.  Oppo. 10. Plaintiffs assert that

7    defendants have failed to show that members with F0 fibrosis scores will be "undeterred from

8    receiving access to Harvoni."  *Id*.  When, as here, defendants have presented evidence in support

9    of a factual basis for mootness, plaintiffs must "furnish affidavits or other evidence necessary to

10   satisfy its burden of establishing subject matter jurisdiction."  *Wolfe*, 392 F.3d at 362 (internal

11   quotations omitted).  Defendants have presented evidence that they have revised and broadened

12   their Harvoni policy and have invited members to reapply for Harvoni coverage.  *See e.g.*,

13   Garrison Decl. ¶ 4; Garrison Decl. Exs. B, D.  The policy permits Harvoni coverage for patients

14   with F0 fibrosis scores where there is "evidence of shared decision-making between the member

15   and physician regarding the benefits and risks of treatment, including the option not to treat."

16   Garrison Decl. ¶ 3; Garrison Decl. Ex. A.  This broad language appears to allow coverage for

17   patients with F0 scores so long as they have discussed treatment options and benefits with their

18   physician, and suggests that Blue Shield of California will not deter F0 patients from receiving

19   Harvoni coverage.  Because plaintiffs have not presented evidence that Blue Shield's policy will

20   deter patients with F0 scores from receiving Harvoni, they have not met their rebuttal burden to

21   establish subject matter jurisdiction.

22           For the reasons outlined above, I find that plaintiffs' claims for injunctive relief are moot.

23   **II.     CLAIM AGAINST BLUE SHIELD LIFE**

24           Defendants move to dismiss all claims against defendant Blue Shield Life, arguing that

25   plaintiffs lack standing to sue and have failed to allege a claim against this entity.  Mot. 10.

26           Individual standing is a prerequisite to all actions.  *O'Shea v. Littleton*, 414 U.S. 488, 494

27   (1974).  In the class action context, "if none of the named plaintiffs purporting to represent a class

28   establishes the requisite of a case or controversy with the defendants, none may seek relief on

behalf of himself or any other member of the class." *Id.*

Under ERISA, only a "participant or beneficiary" may bring civil actions challenging the denial of benefits, and only a "participant, beneficiary, or fiduciary" may bring claims related to a breach of fiduciary duty. 29 U.S.C. § 1132(a)(1), (3). Plaintiffs admit that they are not participants in any plan with Blue Shield Life and that Blue Shield Life did not act as an ERISA fiduciary with respect to the named plaintiffs' claims. Oppo. 18. In the typical case, this would mean that plaintiffs do not have standing to bring ERISA claims against Blue Shield Life.

However, plaintiffs contend that Blue Shield Life and Blue Shield of California should be treated as a single entity for standing purposes, alleging they participated in a common scheme or practice to restrict Harvoni coverage to all class members. Oppo. 21. Plaintiffs cite primarily to *Fallick v. Nationwide Mutual Insurance Company* in support of their claim that a plaintiff who participates in one insurance plan may sue on behalf of plaintiffs participating in other plans. 162 F.3d 410, 423 (6th Cir. 1998). *Fallick* does not support plaintiffs' argument.

In *Fallick*, the Sixth Circuit held that a plaintiff participant in a Nationwide benefit program could bring claims against the same defendant, Nationwide, on behalf of class members that participated in other Nationwide programs. *Fallick*, 162 F.3d at 423. The court did not find that the participant's standing to sue one defendant gave the participant standing to assert claims against other defendants. It made clear that "[a] potential class representative must demonstrate individual standing vis-a-vis the defendant; he cannot acquire such standing merely by virtue of bringing a class action." *Id.* Under the *Fallick* court's reasoning, plaintiffs' standing to sue Blue Shield of California does not allow them to sue Blue Shield Life where they have not alleged individual standing against that defendant.

Plaintiffs rely on *Cady v. Anthem Blue Cross Life & Health Insurance Company,* 583 F. Supp. 2d 1102 (N.D. Cal. 2008) in support of their claim that the defendants should be treated as a single entity as they participated in a common scheme. Oppo. 21. In *Cady,* the court dismissed claims brought by a plaintiff against Health Insurers with whom plaintiff had no direct relationship because the plaintiff could only establish individualized standing for his own insurance company and not for any of the additional insurer-defendants. *Id.* at 1107. However, the court noted that it

10

United States District Court
Northern District of California

1    may have reached a different decision if plaintiff could show that "the decision not to cover [the]

2    treatment was made as the result of a centralized process involving all defendants."  *Id.* Plaintiffs

3    contend that they have demonstrated that the defendants participated in a centralized process to

4    deny treatment for Harvoni and, therefore, plaintiffs' claims against Blue Shield Life should not be

5    dismissed.  Oppo. 21-22.

6          While plaintiffs attempt to allege that defendants participated in a centralized process to

7    deny Harvoni coverage, plaintiffs' specific factual allegations relate only to Blue Shield of

8    California.  *See e.g.*, SAC ¶ 92 ("The P&T Committee's voting membership is made up of

9    independent community physicians and pharmacists, who are not Blue Shield of California

10   employees."); SAC ¶ 94 ("As part of this centralized process, Blue Shield of California chose

11   AbbVie's Viekira Pak as its formulary's preferred drug for the treatment of Hepatitis C.").  Where

12   plaintiffs seem to discuss both defendants, they fail to properly distinguish between the two

13   entities, for example alleging that "Blue Shield's drug coverage list . . . applies to all of the

14   company's commercial, fully-insured customers."  SAC ¶ 88.  This statement suggests that

15   defendants constitute a single company and does not acknowledge that they are separate legal

16   entities.  Plaintiffs' allegation that "defendants . . . adopt[ed] the conclusions and coverage

17   positions of the P&T Committee" is insufficient to demonstrate a centralized process.  SAC ¶ 95.

18   Because plaintiffs have not alleged facts sufficient to show that Blue Shield Life participated in a

19   centralized process with Blue Shield of California, I will not address whether such facts would

20   give plaintiffs standing to maintain their claims against Blue Shield Life.

21         Plaintiffs have failed to allege facts demonstrating individualized standing to sue Blue

22   Shield Life and the claims against it must be dismissed.

23   **III.   CLAIM FOR DISGORGEMENT OF PROFITS**

24         Defendants argue that plaintiffs' claims for disgorgement of profits should be dismissed as

25   such relief is not available under Section 1132(a)(3).  Mot. 10.

26         Under Section 1132(a)(3), a participant or beneficiary may bring a civil action "(A) to

27   enjoin any act or practice which violates any provision of this subchapter or the terms of the plan,

28   or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce

11

1     any provisions of this subchapter or the terms of the plan." 29 U.S.C.A. § 1132(a)(3). The

2     Supreme Court has interpreted "appropriate equitable relief" to include only categories of relief

3     that were typically available in equity. *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1878 (2011).

4     "[L]egal remedies-even legal remedies that a court of equity could sometimes award-are not

5     'equitable relief' under § 502(a)(3)." *Montanile v. Board of Trustees of Nat. Elevator Industry*

6     *Health Benefit Plan*, 136 S. Ct. 651, 661 (2016).

7          The defendants rely heavily on the Supreme Court's recent decision in *Montanile*, in which

8     the Court noted that relief that seeks to recover from a defendant's general assets rather than from

9     a specifically identifiable fund or set of assets generally constitutes "a legal remedy, not an

10    equitable one." *Id.* at 658. In *Montanile*, an ERISA plan paid $120,000 in medical benefits to

11    Montanile to cover the cost of injuries he incurred in a drunk driving accident. *Id.* at 656. After

12    Montanile obtained a $500,000 settlement from the drunk driver, the plan administrator sought to

13    recover the $120,000 it had paid to Montanile, which was permitted under the plan's terms, from

14    the settlement funds. *Id.* Because Montanile had already spent the settlement funds, the plan tried

15    to enforce an equitable lien against Montanile's general assets. *Id.* at 658. The Supreme Court

16    found that the plan's attempt to attach an equitable lien to Montanile's general assets was a legal

17    remedy, not an equitable one, and was not permitted under Section 1132(a)(3). *Id.* Defendants

18    argue that *Montanile* forecloses plaintiffs' claims for disgorgements because plaintiffs seek

19    compensation from Blue Shield's general assets--a legal remedy, not an equitable one--which is

20    impermissible under section 1132(a)(3). Mot. 11.

21         At this stage, *Montanile* does not entirely foreclose plaintiffs' claim. Plaintiffs have not

22    made alleged how or from what funds plaintiffs seek to recover disgorgement of profits. It is

23    possible that plaintiffs will present evidence demonstrating that the profits they seek to disgorge

24    are specifically identifiable and within defendants' possession. While I question whether plaintiffs

25    will be able to identify such a fund, I will not foreclose their claims as a matter of law. As

26    defendants have failed to argue persuasively that plaintiffs' claims for disgorgement of profits are

27    impermissible legal remedies, it would be premature to dismiss plaintiffs' claims at this time.

28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

For the above reasons, defendants' motion to dismiss the Second Amended Complaint is GRANTED in part and DENIED in part.  The motion is GRANTED as to plaintiffs' claims for injunctive relief because these claims are moot.  And it is GRANTED as to claims against Blue Shield Life as plaintiffs' have not alleged standing against this entity.  The motion is DENIED as to plaintiffs' section 1132(a)(3) claims because defendants have not definitively shown that plaintiffs seek an improper legal remedy.  Plaintiffs are given leave to amend within 20 days of this Order.

**IT IS SO ORDERED**.

Dated: August 31, 2016



WILLIAM H. ORRICK
United States District Judge