UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARAM HOMAMPOUR, et al.,<br><br>    Plaintiffs,<br><br>       v.<br><br>BLUE SHIELD OF CALIFORNIA LIFE AND HEALTH INSURANCE COMPANY, et al.,<br><br>    Defendants. | Case No. 15-cv-05003-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS PORTIONS OF THIRD AMENDED COMPLAINT**<br><br>Re: Dkt. No. 49 |

## INTRODUCTION

In the Third Amended Complaint plaintiffs Homampour, Bartels, and Naka again bring claims on behalf of a putative class against defendants Blue Shield Life & Health Insurance Co. ("Blue Shield Life") and California Physicians' Service dba Blue Shield of California ("Blue Shield of California"), alleging that they were denied coverage for the drug Harvoni, in violation of ERISA. Defendants move to dismiss plaintiffs' claims for injunctive relief and all claims against defendant Blue Shield Life on the grounds that (1) plaintiffs' claims for injunctive relief are moot because Blue Shield of California has changed its policy to allow coverage for Harvoni treatment; and (2) plaintiffs do not have standing to bring claims against defendant Blue Shield Life. As before, I agree with defendants and their motion to dismiss is GRANTED, this time without leave to amend.

## BACKGROUND

Plaintiffs Aram Homampour, John Bartels, and Jon Naka suffer from Hepatitis C, a contagious virus that attacks the liver and may cause severe liver damage, infections, liver cancer, and death. Third Amended Complaint ("TAC") ¶ 5 (Dkt. No. 46). Harvoni is a prescription drug used to treat Hepatitis C. *Id.* ¶ 7. It was approved by the FDA on October 10, 2014 and in clinical

1  studies has cured 95-99 percent of patients after eight to twelve weeks of treatment with minimal
2  side effects. *Id.* The cost of a full 12 weeks of treatment of Harvoni is approximately $99,000.
3  *Id.* Viekira Pak is another prescription drug used to treat Hepatitis C. *Id.* ¶ 129. Viekira Pak costs
4  approximately $84,000 for a full 12 weeks of treatment. *Id.* Viekira Pak may cause significant
5  side effects or complications for patients. *Id.* ¶ 130.

6  Homampour, Bartels, and Naka each participated in an employee welfare benefit plan
7  covered by ERISA and issued by Blue Shield of California. *Id.* ¶ 11, 13, 15. Although each
8  plaintiff participated in a separate plan, all of the plans provided coverage for treatments that are
9  medically necessary in exchange for the payment of premiums. *Id.* ¶ 24, 36, 51. Bartels's plan
10 (which uses nearly identical language to Homampour's and Naka's plans) defines medically
11 necessary as follows:

> Services which are Medically Necessary include only those which have been established as safe and effective and are furnished in accordance with generally accepted professional standards to treat an illness, injury, or medical condition, and which, as determined by Blue Shield, are:
> (a) consistent with Blue Shield medical policy; and,
> (b) consistent with the symptoms of diagnosis; and,
> (c) not furnished primarily for the convenience of the patient, the attending Physician or other provider; and,
> (d) furnished at the most appropriate level which can be provided safely and effectively to the patient.

*Id.* ¶ 36.

Each of the named plaintiffs made requests for and was denied coverage of Harvoni on the grounds that the medication was not medically necessary. SAC ¶ 20, 38, 56. Blue Shield of California outlined its Harvoni criteria in various communications with plaintiffs. *Id.* ¶ 22, TAC Ex. A (Dkt. 46-1). On April 22, 2015 Blue Shield denied Homampour's appeal for Harvoni coverage because under the Blue Shield medical necessity criteria, a patient requesting Harvoni coverage was required to have a METAVIR score of F3 or F4 and Homampour's score was F0-F1. TAC Ex. A. (A METAVIR score assesses liver fibrosis (scarring) and health. The scale ranges from F0 - F4 with F0 reflecting no or minimal liver damage and F4 reflecting the highest level of liver damage. *Id.*).

On February 4, 2016, Blue Shield sent Homampour a letter explaining that under the Blue Shield Commercial Criteria, to qualify for Harvoni, a patient must either have cirrhosis (indicated

by fibrosis scores of F4 or F3) or show a contraindication to Viekira that would not be expected with Harvoni treatment. TAC ¶ 32. Blue Shield of California sent similar explanations to Bartels and Naka indicating that under its Harvoni criteria, a patient must demonstrate either (1) an F4 or F3 fibrosis score, or (2) demonstrate a contraindication to Viekira that would not be expected with Harvoni. *Id.* ¶ 38, 56.

On December 17, 2015 Blue Shield amended its Harvoni coverage criteria to expand coverage for Harvoni. Garrison Decl. ¶ 3, (Dkt. No. 51). Under this version of the policy Blue Shield extended coverage to include (1) patients with fibrosis level F1 or greater if use is consistent with FDA guidelines; and (2) patients with fibrosis level F0 who have evidence of other extrahepatic complications, or symptoms related to chronic Hepatitis C (i.e., severe fatigue), or who are at high risk for transmission of Hepatitis C, or who have pregnancy-related concerns, or if there is evidence of shared decision-making between the member and physician regarding the benefits and risks of treatment, including the option not to treat. *Id.*

On April 11, 2016, Blue Shield updated its Harvoni coverage policy again and removed the requirement that certain patients have a specific contraindication to Viekira Pak that would not be expected with Harvoni in order to qualify for coverage. Garrison Decl. ¶ 4.

On or around April 19, 2016, Blue Shield sent letters to its current members and their providers who had requested and been denied Harvoni coverage in the past informing them of a change in policy and inviting them to resubmit any requests. Garrison Decl. ¶ 5. On May 18, 2016 Blue Shield sent additional letters to members and providers who had been denied Harvoni coverage because they did not show a specific contraindication to Viekira Pak that would not be expected with Harvoni and invited them to resubmit any requests. Garrison Decl. ¶ 6.

Plaintiffs filed suit and defendants moved to dismiss. I granted the motion in part, dismissing plaintiffs' claims for injunctive relief and the claims against Blue Shield Life, and granting plaintiffs leave to amend to replead these claims. Order Granting In Part Motion To Dismiss ("August 31, 2016 Order"), Dkt. No. 43. I dismissed plaintiffs' injunctive relief claims as moot because the defendants had provided evidence in the form of "declarations and accompanying attachments showing that Blue Shield of California has changed and broadened its

3

Harvoni policy, notified subscribers and members previously denied coverage of the policy update, and invited these individuals to reapply." Dkt. No. 43 at 7-8. I dismissed the claims against Blue Shield Life because plaintiffs had failed to allege any facts against Blue Shield Life and therefore lacked standing to sue that entity. *Id.* at 10. I rejected plaintiffs' argument that defendants should be treated as a single entity for standing purposes because they had participated in a "centralized process," concluding that plaintiffs had failed to allege facts demonstrating such a process. I declined to reach the issue of whether such facts would allow plaintiffs to sue Blue Shield Life.

## LEGAL STANDARD

A Rule 12(b)(1) attack for mootness may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When a party raises a factual attack, a court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1236 (9th Cir. 2008). "If the moving party converts the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (internal quotations omitted).

Under Rule 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiffs plead sufficient facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). Courts do not require "heightened fact pleading of specifics," but a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In assessing whether the plaintiff has stated a claim upon which relief can be granted, the

court accepts the plaintiffs' allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## DISCUSSION

### I. CLAIMS FOR INJUNCTIVE RELIEF

Plaintiffs allege that defendants Blue Shield Life and Blue Shield of California had similar policies that impermissibly denied Harvoni coverage to many members of their healthcare plans, in violation of ERISA. As in their Second Amended Complaint, plaintiffs assert claims seeking to compel defendants to (1) retract their categorical denials of Harvoni treatment; (2) provide notice of said determination in the form and manner required by ERISA to all plans' subscribers/members who have had requests for Harvoni treatment denied; and (3) provide for the re-review of all improperly denied claims. TAC ¶ 136. Defendants contend that these claims are moot, for the same reasons outlined in my August 31, 2016 Order, and that plaintiffs have not made any new allegations that would alter the analysis. I agree.

As I outlined in the August 31, 2016 Order, a change in policy moots a claim if the policy represents a "permanent change," and is "broad in scope and unequivocal in tone" such that it indicates that recurrence of the challenged practice is unlikely. *White*, 227 F.3d at 1243. In *Iron Arrow Honor Society v. Heckler*, the Supreme Court found a claim moot on summary judgment where a formal change in policy was publically announced, making it unlikely to be later reversed. 464 U.S. 67, 71-72 (1983) (claim was moot where a University "announced its decision to . . . the public, and the courts" such that "there is 'no reasonable likelihood' that the University will later change its mind"). In *Picrin-Peron v. Rison*, the Ninth Circuit found that a claim challenging certain provisions in a student election policy was moot where the school established a new policy and entered into a memorandum of understanding committing not to reenact the challenged provisions such that "there was no reasonable expectation that the injury the plaintiffs suffered will recur." 378 F.3d 1129, 1130-1131 (9th Cir. 2004).

The defendants have submitted declarations and accompanying attachments showing that

Blue Shield of California has changed and broadened its Harvoni policy, has notified subscribers and members previously denied coverage of the policy update, and has invited these individuals to reapply. Garrison Decl. ¶¶ 4-6; Garrison Decl. Exs. B-D. Defendants have also submitted evidence that Blue Shield of California removed the requirement that certain members show a contraindication to Viekira Pak to qualify for Harvoni, has notified members previously denied coverage for this reason of the update, and has invited these individuals to reapply. *Id*. Given these actions, recurrence of the challenged practice is unlikely and plaintiffs' claims against Blue Shield of California for denial of benefits are moot.

In their opposition, plaintiffs argue that their claims seeking to compel defendants to re-review all previously denied claims are not moot because the defendants have not conducted such a review.[1] Oppo. at 4. However, plaintiffs do not dispute that defendants have invited previously denied members to resubmit their requests. They also do not dispute that plaintiff Homampour's renewed request for Harvoni has already been granted, and that Bartels and Naka would no longer qualify for Harvoni because they have already received treatment from Viekira Pak and, presumably, are no longer suffering from Hepatitis C. As noted in my prior Order, plaintiffs are not entitled to Harvoni treatment itself, but to enforce their rights to benefits under their respective health plans. Dkt. No. 43 at 8; 29 U.S.C.A § 1132(a)(1)(B). As none of the named plaintiffs have an ongoing medical need for Harvoni, and therefore have no right to Harvoni related-coverage, they are not entitled to compel Blue Shield to re-review their years old requests. Blue Shield has already provided a means to re-review improperly denied claims by inviting members to resubmit their requests: under this procedure Blue Shield can ensure that members still requiring Harvoni treatment are able to enforce their rights to such benefits without improperly granting coverage to individuals, like the named plaintiffs, who have no medical need, based on outdated information.

Plaintiffs' claims for injunctive relief, including their claims seeking to compel Blue Shield to provide for re-review of all previously denied claims, are dismissed as moot.

---

[1] Plaintiffs' argument that these injunctive relief claims would not require individualized inquiry at class certification is premature and does not address the preliminary question of mootness.

## II. CLAIMS AGAINST BLUE SHIELD LIFE

Defendants again move to dismiss all claims against defendant Blue Shield Life arguing that plaintiffs lack standing to sue this entity. I previously dismissed these claims concluding that plaintiffs had failed to allege any conduct by Blue Shield Life or that they were participants, or beneficiaries of a Blue Shield Life plan. I also rejected plaintiffs' argument that the defendants should be treated as a single entity because they participated in a centralized process, concluding, without addressing the legal merits of the argument, that plaintiffs had not successfully alleged such a process.

Plaintiffs have not alleged any new facts indicating that plaintiffs were participants or beneficiaries of a Blue Shield Life plan, but have added additional allegations regarding a "centralized process." Plaintiffs allege that Blue Shield of California Pharmacy and Therapeutics ("P&T") Committee is a group made up of independent community physicians and pharmacists, who are not Blue Shield employees. TAC ¶ 95. This group approves internal clinical guidelines for medical procedures and specialty pharmacy drugs. *Id.* ¶ 94. Following FDA approval of Harvoni, the P&T Committee adopted guidelines which denied Harvoni to individuals without fibrosis staging scores of F3 or F4 and chose Viekira Pak as the Blue Shield specialty drug formulary's preferred drug for the treatment of Hepatitis C. *Id.* ¶¶ 96-97. Health care plans offered by Blue Shield of California, and insurance policies offered by Blue Shield Life were and are all required to exclusively cover specialty drugs from the P&T Committee's drug formulary. *Id.* ¶ 97. Both Blue Shield of California, and Blue Shield Life adopted policies tying their "Outpatient Drug Coverage" in their plans to the P&T Committee's drug formulary and adopted similar plan policies on Harvoni. *Id.* ¶ 98. They also note that Blue Shield Life is a wholly owned subsidiary of Blue Shield of California. *Id.* ¶ 99.

Individual standing is a prerequisite to all actions. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). In the class action context, "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *Id.*

Under ERISA only a "participant or beneficiary" may bring civil actions challenging the

denial of benefits, and only a "participant, beneficiary, or fiduciary" may bring claims related to a breach of fiduciary duty.  29 U.S.C. § 1132(a)(1), (3).  Plaintiffs admit that they are not participants in any plan with Blue Shield Life and that Blue Shield Life did not act as an ERISA fiduciary with respect to the named plaintiffs' claims.  Generally, this would mean that plaintiffs do not have standing to bring ERISA claims against Blue Shield Life.  Plaintiffs make two arguments as to why they nevertheless have standing: (1) in an ERISA class action a plaintiff need only establish standing with respect to her own ERISA plan if her complaint challenges general practices applicable to all plans at issue; and (2) defendants should be treated as a single entity for the purpose of standing because they participated in a centralized process to deny Harvoni coverage to their members.  Neither of these arguments is convincing.

With regards to their first argument, plaintiffs rely on *Fallick v. Nationwide Mutual Insurance Company* 162 F.3d 410, 423 (6th Cir. 1998) and *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011).  These cases do not support plaintiffs' argument.

In *Fallick*, the Sixth Circuit held that a plaintiff participant in one benefit program could represent participants of other plans, but only because all the plans were offered by the same defendant.  162 F.3d at 423.  The *Fallick* court permitted a plaintiff belonging to a particular Nationwide benefit program to bring claims on behalf of class members that participated in other Nationwide programs – it did not permit it to represent class members belonging to plans offered by a completely separate entity.  *Id.*  Indeed, the court was clear that its holding related only to a plaintiff's ability to represent absent class members under Rule 23 and did not impact whether a plaintiff had standing to sue a particular entity.  *Id.* at 422 (The district court "confuse[d] the issue of a plaintiff's standing under Article III vis-à-vis a defendant with the relationship between a potential class representative and absent class members" when it found that plaintiff lacked standing to represent beneficiaries of other Nationwide programs.).  The *Fallick* court reaffirmed the importance of establishing individual standing, stating that "[a] potential class representative must demonstrate individual standing vis-a-vis the defendant; he cannot acquire such standing merely by virtue of bringing a class action." *Id.* at 423.  *Fallick* does not support plaintiffs' argument that their standing to sue Blue Shield of California allows them to represent a class

8

bringing similar claims against Blue Shield Life.

The Ninth Circuit's decision in *Stearns* also offers plaintiffs no help. In *Stearns*, the Ninth Circuit noted that in a class action, plaintiffs meet the standing requirement if "at least one named plaintiff satisfies the standing requirements." 655 F.3d at 1021. *Stearns* is not applicable because it is undisputed that none of the named plaintiffs have met the standing requirements against Blue Shield Life. Under *Fallick* and *Stearns*, plaintiffs' standing against Blue Shield of California does not allow suit against Blue Shield Life simply because plaintiffs challenge similar policies offered by these separate entities. Plaintiffs must still establish individual standing against each entity. Because they have not done so, plaintiffs' first standing argument fails.

Plaintiffs next argue that Blue Shield of California and Blue Shield Life should be treated as a single entity for standing purposes because they participated in a centralized process to deny Harvoni coverage, adopted similar restrictive policies, and because Blue Shield Life is a wholly owned subsidiary of Blue Shield of California. They cite to *Cady v. Anthem Blue Cross Life & Health Ins. Co.*, 583 F. Supp. 2d 1102, 1107 (N.D. Cal. 2008) and *Alves v. Harvard Pilgrim Health Care Inc.*, 204 F. Supp. 2d 198 (D. Mass. 2002).

In *Alves*, the District of Massachusetts concluded that, under *Fallick*, and the Ninth Circuit's decision in *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 466 (9th Cir. 1973), plaintiffs who had ERISA plans through Harvard Pilgrim Health Care ("HPHC") also had standing to sue two separate but related entities, explaining that "[b]ecause these defendants are wholly owned affiliates of HPHC, in which plaintiffs were participants, and the copayment plan provisions are substantially the same, a single resolution of the dispute would be expeditious." 204 F. Supp. 2d at 205. In *Cady*, the Hon. Claudia Wilken held that plaintiffs only had standing to sue the defendant who supplied the named plaintiff's health plan and dismissed other defendants from the case. 583 F. Supp. 2d at 1107. However, she noted that "[a] different conclusion might be warranted if, as in *Alves*, Defendants shared some relationship such that they should be treated as a single entity. For instance, Plaintiff might be able to proceed against Defendants other than Anthem if the decision not to cover RFA treatment was made as the result of a centralized process involving all Defendants, and operated to deny RFA coverage to all members of Defendants'

plans." *Id.*

Although plaintiffs have alleged a common process by which the defendants adopted substantially similar Harvoni coverage policies, I conclude that the *Alves* decision and the *Cady* dicta, to the extent it relies on *Alves*, are not persuasive as they rest on improper readings of *Fallick* and *La Mar*. As discussed above, although the *Fallick* court held that plaintiffs of a particular healthcare plan could represent plaintiff participants of other healthcare plans offered by the same defendant, it expressly noted that "[a] potential class representative must demonstrate individual standing vis-a-vis the defendant; he cannot acquire such standing merely by virtue of bringing a class action." *Fallick*, 162 F.3d at 423. The court did not find that the participant's standing to sue one defendant gave the participant standing to assert claims against other defendants. The *Alves* court incorrectly expanded the holding of *Fallick* by concluding that a parent-subsidiary relationship, and the fact that the companies used substantially similar policies, excused the normal Article III standing requirement.[2]

The Ninth Circuit has rejected this precise idea. *Lee v. American Nat. Ins. Co.*, 260 F.3d 997 (9th Cir. 2001). In *Lee*, the court held that a plaintiff who had purchased life insurance policies from ANI did not have standing to represent a class of plaintiffs who purchased similar policies from ANI's subsidiary, ANTEX. *Id.* at 999. The court explained, "because Lee had not purchased an ANTEX policy, he could not demonstrate that he had suffered an actual injury and therefore could not establish standing to bring suit in federal court." *Id.*; *see also Perez v. State Farm Mut. Auto. Ins. Co.*, No. 06-cv-01962, 2011 WL 5833636-JW, at *2 (N.D. Cal. Nov. 15, 2011) (holding that plaintiffs with standing to sue parent insurance company did not have standing to bring similar claims against its subsidiaries).

The *Alves* court also incorrectly applied *La Mar*, which is not applicable in the standing context. In *La Mar*, the Ninth Circuit established the juridical link doctrine, holding that, in the context of Rule 23 of the Federal Rules of Civil Procedure, a "plaintiff who has no cause of action

---

[2] In an appeal of the *Alves* decision the First Circuit noted, but did not address, the standing issues because they had not been reasserted on appeal. *Alves v. Harvard Pilgrim Health Care, Inc.*, 316 F.3d 290 (1st Cir. 2003).

10

against [a] defendant cannot 'fairly and adequately protect the interests' of those who do have such causes of action," but if a group of plaintiffs have suffered identical injury as a "result of a conspiracy or concerted schemes" among defendants, or if defendants are "juridically related in a manner that suggests a single resolution of the dispute would be expeditious," then those suits would be permitted. 489 F.2d at 466. The *Alves* court clearly applied the *La Mar* rationale in concluding that, given the defendants' parent-subsidiary relationship, and similar policies, "a single resolution of the dispute would be expeditious" and that plaintiffs therefore had standing against all defendants. *Alves*, 204 F. Supp. 2d at 205.

However, the Ninth Circuit explicitly declined to resolve the issue of standing in *La Mar*, and cases in this circuit have consistently held that the *La Mar* juridical link doctrine should not be applied to resolve standing issues at the pleading stage; it applies only to issues relevant to class certification purposes, such as adequacy and typicality. *See Siemers v. Wells Fargo & Co.*, No. 05-cv-04518-WHA, 2006 WL 3041090, at *6 (N.D. Cal. Oct. 24, 2006) ("the juridical-link doctrine has been held not to apply to standing questions at the pleading stage"); *Akaosugi v. Benihana Nat. Corp.*, No-11-cv-01272-WHA, 2011 WL 5444265, at *2 (N.D. Cal. Nov. 9, 2011) ("[A] careful review of all decisions on point revealed that no district court in the Ninth Circuit has found a plaintiff to have established Article III standing based on a juridical link between defendants."). The *Cady* court itself rejected *Alves*'s reading of *La Mar* by concluding that "the [juridical link] doctrine, developed in the context of class certification analysis under Rule 23, should properly remain in the analysis of adequacy and typicality of plaintiffs for which it was originally conceived." 583 F. Supp. 2d at 1107.

Because I conclude the *Alves* court's holding was based on an incorrect reading of *Fallick* and *La Mar*, I do not find it persuasive. Similarly, the dicta from *Cady*, citing *Alves*, is unsupported by the case law. The Ninth Circuit, and district courts in this Circuit, have consistently held that a plaintiff who purchased insurance from a parent insurance company does not have standing to sue that parent's subsidiaries, even when those subsidiaries have similar or identical policies. *See, e.g.*, *Lee*, 260 F.3d at 999; *Perez*, 2011 WL 5833636-JW, at *2; *Carranza v. GEICO Gen. Ins. Co.*, No. 13-cv-1932-HZ, 2015 WL 1611442, at *2 (D. Or. Apr. 10, 2015);

*Shin v. Esurance Ins. Co.*, No 8-cv-5626, 2009 WL 688586, at *5 (W.D. Wash. Mar. 13, 2009) ("The Court refuses to embrace the notion that all related companies may be haled into court for the actions of one . . . of those inter-related, but distinct, companies merely because they have agreed on common practices").

Plaintiffs have failed to allege facts indicating that they are participants or beneficiaries of a Blue Shield Life plan. Accordingly, they have failed to establish standing to bring claims against Blue Shield Life. The claims against Blue Shield Life must be dismissed.

## CONCLUSION

For the reasons outline above, defendants' Motion to Dismiss Portions of the Third Amended Complaint is GRANTED. Because plaintiffs have already been given leave to amend their claims for injunctive relief and their claims against Blue Shield Life, and it appears that further amendment would be futile, these claims are dismissed WITH PREJUDICE.

**IT IS SO ORDERED**.

Dated: December 22, 2016



WILLIAM H. ORRICK
United States District Judge

12